UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 13-11454

JOHN F. FORRISTALL III

v.

FEDERAL EXPRESS CORPORATION

MEMORANDUM AND ORDER ON DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

November 21, 2014

STEARNS, D.J.

The facts, viewed in the light most favorable to plaintiff John Forristall III, the non-movant, are as follows. Forristall was a longtime, and by all accounts, successful employee of defendant Federal Express Corporation (Fedex). In January of 2003, Forristall and his then-wife Mary divorced. The Divorce Judgment Nisi required Forristall, *inter alia*, to

> maintain his present group medical insurance policy, (Cigna), or its equivalent . . . for MARY for so long as she is able to be covered at no additional cost to JOHN. If there is an additional cost associated with covering MARY on his family plan health insurance policy, then JOHN shall provide Mary in writing with the opportunity to continue such coverage upon her payment of that additional expense.

Am. Compl. ¶ 12, Ex. C. (The Divorce Judgment further recited that this provision satisfied the Massachusetts insurance continuation laws.)

Forristall notified his then-manager Chuck Strong of his divorce and informed Strong of the obligations imposed by the Divorce Judgment (including payment of child support and alimony). Strong made entries on his computer, and assured Forristall that he was in compliance with the Divorce Judgment. With respect to Forristall's medical insurance, Strong stated that he was going to "leave it the way it is." Am. Compl. ¶ 14.

Mary was covered under Fedex's group health insurance plan until March of 2010, when Forristall approached his current manager, Joseph Zizza, with a request to be given two days off work to propose to his girlfriend. He also asked Zizza about removing Mary from his health insurance plan and substituting his soon-t0-be bride in her place. Zizza informed Forristall that Mary should never have been kept on the plan after the divorce. Forristall was first suspended with pay, then later without, and ultimately terminated, allegedly because Mary had been wrongfully extended coverage under Forristall's insurance plan.[1]

---

[1] At oral argument, Fedex elaborated on its stated reason for terminating Forristall, contending that it took the action that it did because of Forristall's continuing misrepresentation of his marital status (and to a lesser degree because Fedex paid some $ 6,573.72 for Mary's coverage, an amount it sought to counterclaim against Forristall). Fedex's rationale is plausible and could well be found convincing by a jury, but (as previously noted) at summary judgment the court is required to look at the facts in the light most indulgent to Forristall.

Forristall filed this lawsuit in April of 2013. He alleges wrongful discharge (Count I), negligent misrepresentation (Count II), intentional misrepresentation (Count III), and promissory estoppel (Count IV). Fedex contends that all four counts of the Amended Complaint are preempted by the Employee Retirement Income Security Act of 1974 (ERISA), as amended, 29 U.S.C. § 1001 et seq.[2] The court heard argument on November 20, 2014.

## DISCUSSION

ERISA "supersede[s] any and all State laws insofar as they . . . relate to any [qualified] employee benefit plan." 29 U.S.C. § 1144 (a). For purposes of ERISA exemption, "state law" includes "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State," 29 U.S.C § 1144(c)(1), except state laws that "regulate[] insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A). A state law "relate[s] to" an employee benefit plan "if it [1] has a connection with or [2] reference to such a plan." *California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.*, 519 U.S. 316, 324 (1997) (citation omitted).

Preempted state laws that reference ERISA plans include "common-law cause[s] of action premised on the existence of an ERISA plan, . . .

---

[2] It is undisputed that the Fedex group health plan is governed by ERISA.

[w]here a State's law acts immediately and exclusively upon ERISA plans, . . . or where the existence of ERISA plans is essential to the law's operation." *Id.* at 324-325. State laws that do not reference ERISA plans may nonetheless be preempted if they have "a connection with" ERISA plans. A "forbidden connection" is determined by "the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive, [] as well as to the nature of the effect of the state law on ERISA plans." *Id.* at 325. "ERISA's objectives include providing a uniform national administration of ERISA plans and avoiding inconsistent state regulation of such plans." *Zipperer v. Raytheon Co.*, 493 F.3d 50, 53 (1st Cir. 2007) (internal quotation marks omitted).

The crux of Forristall's claims is that he reasonably relied (to his detriment) on Strong's implicit representation that he could permissibly keep Mary on his Fedex group health plan as his designated spouse (and thus satisfy the Divorce Judgment). Forristall relies on *Cuoco v. Nynex, Inc.*, 722. F. Supp. 884 (D. Mass. 1989) and *Pace v. Signal Tech. Corp.*, 417 Mass. 154 (1994), in maintaining that his claims are exempt from the "deliberately expansive" scope of ERISA preemption. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46 (1987). In *Cuoco*, the court found no preemption where the ex-spouse of an employee alleged that the employer had

4

misrepresented to her that she was covered under the employer's group medical insurance.

> In [the court's] opinion, plaintiff's claims arise not from the deprivation of any rights under the NYNEX plan but from the series of promises and misrepresentations which were allegedly made to her by defendants in 1987. She was lured into a false sense of security as to her health insurance and was prevented from seeking other arrangements with her husband, who was then still alive, in accordance with the decree of divorce.

*Cuoco*, 722 F. Supp. at 886.

In *Pace*, the Massachusetts Supreme Judicial Court similarly held that ERISA did not preempt an employee's claim that his employer misrepresented to him that his long-term disability insurance would remain in effect for six months after his termination.

> "That the subject of the deception concerned pension benefits is only incidental and not essential to the plaintiff's cause of action. Like promises for a raise in salary, a promotion, or the use of tickets to a baseball game, plaintiff's employer's promise to provide the plaintiff with certain benefits at some unknown time in the future, upon which plaintiff could reasonably rely, is the essence of the [misrepresentation] alleged."

*Pace*, 417 Mass. at 157, quoting *Greenblatt v. Budd Co.*, 666 F. Supp. 735, 742 (E.D. Pa. 1987).

*Cuoco* and *Pace*, however, were decided before the First Circuit's opinion in *Carlo v. Reed Rolled Thread Die Co.*, 49 F.3d 790 (1st Cir. 1995). In *Carlo*, an employee alleged that he elected early retirement relying on

5

the employer's misstatement of his retirement plan benefits. The Court

acknowledged the then-divided authority over whether ERISA preempted

state law misrepresentation claims.

> Courts have struggled over whether ERISA preempts claims of misrepresentation regarding the scope or existence of benefits, and "'there is ample, well reasoned authority which would support either position.'" *Pace,* [417 Mass. at 157] (quoting *Cutler v. Phillips Petroleum Co.,* 71 Wash. App. 511, 859 P.2d 1251, 1254 (1993)). Courts finding that misrepresentation claims are not preempted have reasoned that the mere fortuity that the misrepresentation involved pension benefits is insufficient to cause the "axe of federal preemption to fall." *Greenblatt*[], 666 F. Supp. [at] 742 []; *see also Pace,* [417 Mass. at 159] (holding that where the "resolution of state law claims will neither 'determine whether any benefits are paid' nor 'directly affect the administration of benefits under the plan,' the claims do not 'relate to' ERISA and accordingly are not preempted") (citation omitted). That is, they have concluded that the misrepresentation claims should not be preempted because, "simply put, the premise underlying [the cause of] action [is] that the plaintiff was deceived by the verbal statements made and the actions taken by his employer. . . . *Greenblatt*, 666 F. Supp. at 742.

*Id.* at 793-794.[3]

Although the First Circuit noted that "courts finding against

preemption have been troubled by the fact that ERISA preemption in these

benefit misrepresentation suits often leaves plaintiffs remediless," *id.* at

794, and acknowledged the "cogen[cy]" of the reasoning of cases like *Pace*,

---

[3] The First Circuit noted that *Pace*, "as a state court decision, is not controlling precedent on this issue." *Id.* at 793 n.2.

6

*id.*, it "nevertheless f[ound] that ERISA preempt[ed] the Carlos' claims because they 'relate to' an employee benefit plan." *Id.* In so holding, the Court looked first to congressional intent in mandating ERISA preemption.

> It should be stressed that with the narrow exceptions specified in the bill, the substantive and enforcement provisions of the conference substitute are intended to preempt the field for Federal regulations, thus eliminating the threat of conflicting or inconsistent State and local regulation of employee benefit plans. This principle is intended to apply in its broadest sense to all actions of State or local governments, or any instrumentality thereof, which have the force or effect of law.

*Id.*, quoting 120 Cong. Rec. 29933 (1974).

The Court then determined that given "this sweeping principle," the Carlos' claim was preempted because "they have 'a connection with or reference to'" the ERISA early retirement plan. *Carlo*, 49 F.3d at 794.

> If the Carlos were successful in their suit, the damages would consist in part of the extra pension benefits which [the employer] allegedly promised him. To compute these damages would require the court to refer to the ERP [(Early Retirement Plan)] as well as the misrepresentations allegedly made by [the employer]. Thus, part of the damages to which the Carlos claim entitlement ultimately depends on an analysis of the ERP. To disregard this as a measurement of their damages would force the court to speculate on the amount of damages. Consequently, because the "court's inquiry must be directed to the plan," the Carlos' claims are preempted under the first test set forth in *Ingersoll-Rand.* [*Co. v. McClendon*], 498 U.S. [133,] 140 [(1990)].

*Id.*; *see also Vartanian v. Monsanto*, 14 F.3d 697, 700 (1st Cir. 1994) (holding as preempted employee's claim that employer misrepresented its

7

intent to offer a more generous early retirement plan because "[t]here is simply no cause of action if there is no plan").

Forristall attempts to distinguish the strict preemption line of cases by arguing that: (1) he is not attempting to claim plan benefits as the plaintiff in *Vartanian* was, and (2) unlike *Carlo*, the disposition of his claims does not require analyzing the plan because he does not dispute Mary's ineligibility for plan coverage after their divorce. The First Circuit's more recent decision in *Zipperer*, however, makes clear that these distinctions do not alter the outcome.

In *Zipperer*, the First Circuit found preempted an employee's claim that his employer's "negligent recordkeeping led to his reliance on an erroneous estimate of his retirement benefits" in electing early retirement. *Zipperer*, 493 F.3d at 54. The Court rejected Zipperer's contention that his claims related only to the negligent recordkeeping and not the retirement plan, and that he was seeking only negligence damages and not a reinstatement of benefits. "In our view, even a narrow reading of section [1144](a)'s "related to" provision yields a conclusion that Zipperer's claims are preempted, and that is because the claims can only be evaluated with respect to Raytheon's recordkeeping responsibilities for the plan [under ERISA]." *Id.*

Here, Forristall argues that Fedex's liability stems from Strong's mistaken impression that Mary remained eligible for coverage under Forristall's insurance plan after the divorce and his failure to correct the relevant data entries in Fedex's computer system. This argument, however, directly touches on Fedex's recordkeeping and disclosure duties as an ERISA plan administrator, which include providing participants with an accurate written description of the plan. ERISA, at 29 U.S.C. § 1021, provides that

> [t]he administrator of each employee benefit plan shall cause to be furnished in accordance with section 1024(b) of this title to each participant covered under the plan and to each beneficiary who is receiving benefits under the plan –
>
> (1) a summary plan description described in section 1022(a)(1) of this title. . . .

Section 1022(a)(2) mandates that the summary plan description include, *inter alia*, "the plan's requirements respecting eligibility for participation and benefits."[4]

Forristall does not dispute that he received copies of the plan description from Fedex and that the plan descriptions accurately stated the

---

[4] This serves the purpose, among others, of giving ERISA plan participants the necessary tools to police the integrity of the plan provider. Section 1132(a)(3) authorizes participants and beneficiaries to bring civil actions to enforce the terms of a plan. Congress intended to occupy the field of ERISA plan enforcement through the mechanisms it provided in the ERISA statute itself.

eligibility requirements for dependents (such as Mary).  To permit plan participants to bring state law claims premised on oral explanations that deviate from the statutorily required written plan description would undo Congress's intent of insuring the integrity and consistency of ERISA plan administration.  As the First Circuit explained in *Zipperer*,

> [s]ubjecting Raytheon's plan administration to the state law scrutiny Zipperer seeks would conflict with ERISA's proscription against state law "mandat[ing] plan administration" and would also impermissibly create "an alternative enforcement scheme" to ERISA's own recordkeeping and reporting requirements. . . . Moreover, allowing a claim to proceed under Massachusetts law would inexorably – and impermissibly – lead to inconsistent state regulations, as state courts "develop different substantive standards applicable to the same employer conduct, requiring the tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction.  Such an outcome is fundamentally at odds" with ERISA's goal of uniformity.

*Zipperer*, 493 F.3d at 54 (citations omitted).  Because Forristall's claims are "inseparably connected" to Fedex's administration of its group health plan, *Carlo*, 49 F.3d at 795, they are preempted by ERISA.

ORDER

For the foregoing reasons, defendant's motion for summary judgment is <u>ALLOWED</u>.  The Clerk will enter judgment for Fedex and close the case.

SO ORDERED.

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE